1   E. MARTIN ESTRADA
    United States Attorney
2   MACK E. JENKINS
    Assistant United States Attorney
3   Chief, Criminal Division
    ALIX MCKENNA (Cal. Bar No. 295202)
4   Assistant United States Attorney
    Environmental Crimes and Consumer Protection Section
5        1300 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-6166
7        Facsimile: (213) 894-0141
         E-mail:    alix.mckenna@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10                      UNITED STATES DISTRICT COURT

11               FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,           No. CR 8:22-CR-00145-MWF

13          Plaintiff,                  GOVERNMENT'S SENTENCING POSITION

14             v.                       Hearing Date: April 17, 2024

15  ARMAND ION,                         Location:      Courtroom of the
                                                       Hon. Michael W.
16          Defendant.                                 Fitzgerald

17

18       Plaintiff United States of America, by and through its counsel

19  of record, the United States Attorney for the Central District of

20  California and Assistant United States Attorney Alix McKenna, hereby

21  files its sentencing position.

22  //

23  //

24

25

26

27

28

1    This sentencing position is based upon the attached memorandum

2 of points and authorities, the files and records in this case, and

3 such further evidence and argument as the Court may permit.

4 Dated: April 4, 2024                    Respectfully submitted,

5                                         E. MARTIN ESTRADA
                                          United States Attorney
6
                                          MACK E. JENKINS
7                                         Assistant United States Attorney
                                          Chief, Criminal Division
8

9                                              /s/
                                          ALIX MCKENNA
10                                        Assistant United States Attorney

11                                        Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3       On February 7, 2024, defendant Armand Ion ("defendant") pled

4 guilty to bank fraud, in violation of 18 U.S.C. § 1344(2), and

5 aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

6 (Presentence Investigation Report ("PSR") ¶ 1.)   The case arose out

7 of a scheme in which defendant conspired with others to install

8 cameras and skimming devices on automated teller machines ("ATM"s) to

9 steal customer information, and then use counterfeit cards embedded

10 with the customer information.   (PSR ¶ 16-18).   Defendant personally

11 installed multiple devices.   (PSR ¶ 20-23).   However, he was not the

12 mastermind of the scheme, did not direct others, and played a smaller

13 role in a larger criminal plan.   (PSR ¶ 54).   Thus, the government

14 believes that a 2-level decrease is appropriate under U.S.S.G.

15 §3B1.2(b).   Probation found that defendant's total offense level is

16 18 and that his Guideline imprisonment range is 27 to 33 months, plus

17 24 months consecutive for his identity theft conviction (PSR ¶ 61,

18 112).   The government concurs and respectfully requests that the

19 Court sentence defendant to: (1) a term of 51 months imprisonment,

20 consisting of 27 months for the bank fraud, and a consecutive 24

21 months for the aggravated identity theft (2) a 3-year term of

22 supervised release with the terms and conditions recommended by the

23 USPO, (3) a mandatory special assessment of $100, and (4) restitution

24 in the amount to be determined at a hearing.

25 **II.   STATEMENT OF FACTS**

26       Beginning no later than August 4, 2021, and continuing through

27 at least September 8, 2022, defendant conspired with Gheorghe Dumitru

28 and others to execute a bank fraud scheme.   (PSR ¶ 13).   Dumitru held

1  a leadership role over his coconspirators, including defendant.  (PSR

2  ¶ 14).

3      Over the course of his conspiracy, defendant and his co-

4  conspirators installed skimming devices, which record and store data

5  on ATMs.  (PSR ¶ 14).  Cameras installed with the skimming devices

6  captured keypad entries, including cardholders' personal

7  identification numbers.  (Id.)  The information recovered from or

8  transmitted by a skimming device was then encoded onto counterfeit

9  cards and used alone or in conjunction with an authentication

10 feature, such as a PIN, to incur charges or withdraw funds from a

11 victim cardholder's bank, credit card, or EBT account without the

12 victim's consent, knowledge, or authorization.  (PSR ¶ 17).

13      Specifically, on August 4, 2021, defendant and co-conspirators

14 installed a skimming device on a Bank of America ATM located in

15 Irvine, California, along with a device equipped with a camera.  (PSR

16 ¶ 20).  On September 1, 2021, defendant and a co-conspirator

17 attempted to install a skimming device at a Bank of America ATM

18 located in Moorpark, California.  (PSR ¶ 21).  On September 2, 2021,

19 defendant used a counterfeit card encoded with victim J.S.'s Bank of

20 America debit card to make an unauthorized withdrawal of

21 approximately $300 in cash from a Bank of America ATM located in

22 Santa Ana, California.  (PSR ¶ 22).  Defendant also used a

23 counterfeit card encoded with debit card information belonging to

24 victim R.A., to check the balance in victim R.A.'s account without

25 victim R.A.'s authorization.  (PSR ¶ 23).  On May 14, 2022, defendant

26 and co-conspirators installed an ATM skimming device at a point-of-

27 sale terminal in Madera, California.  (PSR ¶ 24).

28

                                    2

Between August 4, 2021, and September 13, 2021, defendant and co-conspirators made balance inquiries or withdrawals on 277 unique cards.  (PSR ¶ 26).  During this time, defendant and co-conspirators caused an actual loss of $120,120 from 109 unique cards belonging to more than 10 victims.  (PSR ¶ 26).  However, other coconspirators are directly responsible for the bulk of the loss.

During a search of his home in September 2022, agents recovered seven skimming devices, a card encoding device, and twenty debit-type gift cards.  (PSR ¶ 26).  In addition, between July 18, 2022, and September 3, 2022, Ion made 1,516 calls to EBT card phone lines for eight different states.  (PSR ¶ 27).

## III. GUIDELINES CALCULATIONS

### A.  Offense Level

In the PSR, the USPO calculated the base offense level for defendant's crime as 7 under U.S.S.G. § 2B1.1(a)(1).  (PSR ¶ 38.) Probation found that a 12-level enhancement for amount of loss should be applied under U.S.S.G. § 2B1.1(b)(1)(G).  (PSR ¶ 42.)  Further, probation found that a two-level increase should apply under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involves more than 10 victims.  (PSR ¶ 45.)  Probation applied an additional two-level enhancement due to the sophistication of the crime, under U.S.S.G. § 2B1.1(b)(10), and another two levels for possession of device making equipment and authentication features under U.S.S.G. § 2B1.1(b)(11).  (PSR ¶ 47-49.)  Under 18 U.S.C. § 1028(d)(1), a pin number is an authentication feature.  (18 U.S.C. § 1028(d)(1), PSR ¶ 37.)  The statute provides:

> **the term "authentication feature" means any** hologram, watermark, certification, symbol, **code**, image, **sequence of numbers or letters, or other feature** that either individually

3

1
2
3

or in combination with another feature is **used by the issuing authority on  an identification  document**, document-making implement, **or means  of  identification  to  determine  if  the document is counterfeit, altered, or otherwise falsified**;

4

18 U.S.C. § 1028(d)(1).

5

Probation also found that a two-level reduction should apply for

6

being a minor participant under U.S.S.G. § 3B1.2(b).  Lastly,

7

probation subtracted three levels for acceptance of responsibility

8

and an additional two levels because defendant is a zero-point

9

offender under USSG 4C1.1 for a total offense level of 18. (PSR ¶ 54,

10

57-58, 60-61.)

11

The government concurs with probation's analysis.

12

**B.   Criminal History and Guidelines Range**

13

Probation found that defendant is a zero-point offender.  (PSR ¶

14

60).  While defendant has a foreign criminal record, under U.S.S.G.

15

§ 4A1.2(h), sentences resulting from foreign convictions are not

16

counted.  (PSR ¶ 66).  Thus, the government concurs.

17

**IV.   ARGUMENT**

18
19

**A.   A Custodial Sentence of 51 Months Is Sufficient but Not Greater Than Necessary**

20

The government respectfully recommends that the Court impose a

21

low-end sentence of 27 months' imprisonment for defendant's bank

22

fraud conviction, followed by a mandatory consecutive sentence of 24

23

months for his aggravated identity theft conviction for a total

24

imprisonment period of 51 months, a 3-year period of supervised

25

release, a mandatory special assessment of $100, and restitution.

26

The government does not recommend that a fine be imposed due to

27

defendant's likely inability to pay.  This sentence is sufficient,

28

4

1    but not greater than necessary, to comply with the purposes

2    enumerated in 18 U.S.C. § 3553(a)(2) for the offense.

3            1.    Section 3553(a)(1)

4        Section § 3553(a)(1) directs the court to consider the "nature

5    and circumstances of the offense and the history and characteristics

6    of the defendant," when selecting an appropriate sentence.   18 U.S.C.

7    § 3553(a)(1).   Here, defendant was a minor participant in a larger

8    criminal conspiracy, and a sentence of 51 months would adequately

9    account for his role in the offense.

10           2.    Section 3553(a)(2) factors

11       Section 3583(a)(2) lists the purposes of a punitive sentence and

12   directs the court to impose a sentence that is sufficient but not

13   greater than necessary to comply with those purposes:   "(A) to

14   reflect the seriousness of the offense, to promote respect for the

15   law, and to provide just punishment for the offense; (B) to afford

16   adequate deterrence to criminal conduct; (C) to protect the public

17   from further crimes of the defendant; and (D) to provide the

18   defendant with needed educational and vocational training, medical

19   care, or other correctional treatment in the most effective manner."

20   18 U.S.C. § 3553(a)(2).   A custodial sentence of 51 months is

21   sufficient, but not greater than necessary to satisfy at least the

22   first three of these purposes.

23                   *a.    A 51-Month Sentence Would Reflect the Seriousness*
                           *of the Offense, Promote Respect for the Law, and*
24                         *Constitute a Just Punishment*

25       First, a 51-month sentence would reflect the seriousness of the

26   crime, promote respect for the law, and provide just punishment for

27   the offense.   Defendant installed skimming devices and accessed

28   civilians' financial information without consent.   However, he was

1  not the leader of the conspiracy and did not direct the actions of

2  others.  A 51-month sentence would constitute a just punishment.

3              *b.  A 51-Month Sentence Would Deter Future Criminal*
                    *Conduct*

4

5      Second, a 51-month sentence would deter future criminal conduct.

6  Such a sentence would exceed any of the sentences that defendant

7  received in his foreign criminal cases.  A prison term of over four

8  years would send a strong message and deter defendant from committing

9  future crimes in the United States.

10             *c.  A 51-Month Sentence Would Protect the Public from*
                   *Future Crimes by the Defendant*

11

12     A 51-month sentence would adequately protect the public from

13  future crimes by defendant.

14  **V.   RESTITUTION**

15     18 U.S.C. § 3663 prescribes mandatory restitution for a crime

16  where an identifiable victim suffers a pecuniary loss.  18 U.S.C.A. §

17  3663A.  Further, 18 U.S.C. § 3663 permits a court to order a

18  defendant to pay restitution to a victim in cases where such an order

19  is not mandated by law.  18 U.S.C. § 3663A.  The United States

20  requests that a restitution hearing be set 60-90 days after the

21  sentencing, under 18 U.S.C. § 3556(d)(5), in order to fully account

22  for any and all victim restitution requests.

23  **VI.  CONCLUSION**

24     For the foregoing reasons, the government respectfully requests

25  that this Court sentence defendant to: (1) a total term of 51 months

26  imprisonment; (2) a 3-year term of supervised release with the terms

27  and conditions recommended by the USPO; and (3) a mandatory special

28  assessment of $100, and restitution.

6